UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHERINE GRILLO and CHRISTIAN REID, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br>  v. <br><br> RCN TELECOM SERVICES, LLC; PATRIOT MEDIA CONSULTING, LLC; RCN ISP, LLC; RCN MANAGEMENT CORPORATION; RCN CAPITAL CORP.; RCN TELECOM SERVICES (LEHIGH), LLC RCN TELECOM SERVICES OF NEW YORK, L.P.; RCN TELECOM SERVICES OF PHILADELPHIA, LLC; RCN TELECOM SERVICES OF ILLINOIS, LLC; and RCN TELECOM SERVICES OF MASSACHUSETTS, LLC; <br><br> Defendants. | Case No.: <br><br> **COMPLAINT AND JURY DEMAND** <br><br> **PUTATIVE CLASS ACTION** |

Plaintiffs Katherin Grillo and Christian Reid, individually and on behalf of all others similarly situated, brings this class action Complaint against Defendants RCN Telecom Services, LLC, Patriot Media Consulting, LLC, RCN ISP, LLC, RCN Management Corporation, RCN Capital Corp., RCN Telecom Services (Lehigh), LLC, RCN Telecom Services of New York, L.P., RCN Telecom Services of Philadelphia, LLC, RCN Telecom Services of Illinois, LLC, and RCN Telecom Services of Massachusetts, LLC, (collectively, "RCN" or "Defendants"), and alleges as follows:

1

## INTRODUCTION

1.    This proposed class action challenges a bait-and-switch and billing fraud scheme perpetrated by RCN against its broadband internet customers. RCN's advertising, its website, and its sales and customer service staff mislead U.S. consumers by advertising and promising a particular flat monthly rate for its internet service. Then, after customers sign up, RCN actually charges higher monthly rates than the customers were promised and agreed to pay. RCN covertly increases the actual price by padding customers' bills each month with a made-up "Network Access and Maintenance Fee" (currently $4.37) on top of the advertised price. The Network Access and Maintenance Fee is not disclosed to customers before or when they sign up, and in fact is never adequately or honestly disclosed to them. The so-called "Network Access and Maintenance Fee" (the "Fee") is not, in fact, a bona fide charge, but rather it is a completely made-up and fabricated charge. RCN invented and utilizes the Fee to charge more per month for its service without having to advertise or notify its customers of the higher prices it is charging for the service.

2.    Through the scheme, RCN has unfairly and improperly extracted over $30 million in ill-gotten gains from its over 400,000 broadband internet customers in the states of New Jersey, Pennsylvania, New York Massachusetts, Illinois, and Washington, D.C.

3.    The first time RCN even mentions the existence of the Fee is on customers' monthly billing statements, which customers begin receiving only *after* they sign up for the service and are committed to their purchase.

4.    Making matters worse, RCN deliberately hides and misrepresents the Fee in its billing statements. RCN buries the "Network Access and Maintenance Fee" in the "Taxes, Surcharges & Fees" section of the bill, lumped together with purported taxes and government

and third-party pass-through charges. This misleadingly conveys to RCN's customers that the Fee is an actual tax or other standard government or third-party pass-through fee, when in fact it is a completely made-up "fee" which RCN uses to advertise and promise lower rates than it actually charges. Further, fine print on the bill directs consumers who seek an "explanation" of the Fee to go to a webpage on RCN's website where *RCN explicitly and falsely states that the Network Access and Maintenance Fee is a "tax."*

5.      If customers inquire or complain about the Fee, RCN likewise outright lies to customers and tells them it is a tax or government-related fee over which RCN has no control.

6.      RCN first began sneaking the Fee into all of its customers' bills in January 2018, initially at a rate of $1.97 per month. Since then, RCN has systematically increased the bogus monthly Fee by $1.20 each year—to $3.17 in January 2019, and then to $4.37 in January 2020.

7.      In essence, RCN invented the "Network Access and Maintenance Fee" as a way to covertly increase the actual monthly price customers are charged for their service, and RCN has continued to use the Fee and unilateral increases thereto as a lever to ratchet up the price. This scheme has enabled, and continues to enable, RCN to effectively increase its broadband internet rates without having to publicly announce those higher rates, and allows RCN to entice more customers by misrepresenting the costs customers would pay both in absolute terms and relative to other broadband internet providers in the industry.

8.      Plaintiffs bring this proposed class action under New Jersey law. New Jersey law applies to the claims of all members of the proposed nationwide Class, because RCN has specified in its form consumer contract that disputes regarding its broadband internet service are governed by the laws of the State of New Jersey.

3

9.     Plaintiffs seek injunctive, declaratory, monetary, and statutory relief for themselves and the proposed Class to obtain redress and to end Defendants' bait-and-switch scheme.

10.     Plaintiffs bring the following New Jersey law claims:

a.     A claim under the New Jersey Consumer Fraud Act ("CFA"), in that RCN's uniform policies as described herein constitute an unconscionable commercial practice that violates N.J.S.A. § 56:8-2;

b.     A claim under the New Jersey Truth in Consumer Contract Warranty and Notice Act ("TCCWNA"), in that RCN has presented, shown, offered, and submitted consumer notices, signs, and contracts to Plaintiffs and the Class (including on its website and via customer bills) that violated their clearly established rights arising under state law, as prohibited by N.J.S.A. § 56:12-15;

c.     A claim under New Jersey common law for breach of contract based on Defendants' violation of the implied covenant of good faith and fair dealing; and

d.     A claim under the New Jersey Declaratory Judgments Act, N.J.S.A. § 2A:16-51, et seq., for an order for injunctive and declaratory relief: (1) declaring Defendants' policy of charging a deceptive and inaccurately disclosed Network Access and Maintenance Fee to be a violation of New Jersey law; (2) permanently enjoining Defendants from engaging in the misconduct alleged herein; and (3) permanently enjoining Defendants from charging the Network Access and Maintenance Fee.

## PARTIES

11.     Katherine Grillo is a citizen and resident of Middlesex County, Massachusetts. Like other class members, Grillo was a customer of RCN's broadband internet services during the proposed class period and was charged and paid the unlawful Network Access and Maintenance Fee complained of herein.

12.     Christian Reid is a citizen and resident of Northampton County, Pennsylvania (in the Lehigh Valley region).  Like other class members, Reid was a customer of RCN's broadband internet services during the proposed class period and was charged and paid the unlawful Network Access and Maintenance Fee complained of herein.

13.     Defendants RCN Telecom Services, LLC; RCN ISP, LLC; RCN Management Corporation; RCN Capital Corp.; RCN Telecom Services (Lehigh), LLC; RCN Telecom Services of New York, L.P.; RCN Telecom Services of Philadelphia, LLC; RCN Telecom Services of Illinois, LLC; and RCN Telecom Services of Massachusetts, LLC are Internet Service Providers that provide broadband internet services to customers throughout a number of major metropolitan regions in the U.S., including New Jersey, Pennsylvania, New York, Massachusetts, Illinois, and Washington D.C. Upon information and belief, these defendants (the "RCN Defendants") are operated as a single, integrated company, under the RCN brand, with common management, a common corporate headquarters, and common policies and practices with respect to the provision of internet services.

14.     Defendant Patriot Media Consulting, LLC ("Patriot") provides management services to the RCN Defendants. Based on information and belief, during the relevant period, Patriot dominated, and was responsible for management of, the RCN Defendants. Based on information and belief, Patriot was responsible for formulating and implementing all executive,

marketing, sales, and customer service policies and practices for the RCN Defendants. Based on information and belief, Patriot also has been an owner of the RCN Defendants. Based on information and belief, Patriot has a direct financial interest in the amount of revenue the RCN Defendants collected from its customers, including the revenue collected from the "Network Access and Maintenance Fee" which is the subject of this lawsuit.

15.     All Defendants together, including Patriot Media Consulting, LLC, are collectively referred to herein as "RCN" or "Defendants."

16.     Based on information and belief, RCN Telecom Services, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

17.     Based on information and belief, RCN ISP, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

18.     Based on information and belief, RCN Management Corporation is a Delaware corporation with its principal place of business in Princeton, New Jersey.

19.     Based on information and belief, RCN Capital Corp. is a Delaware corporation with its principal place of business in Princeton, New Jersey.

20.     Based on information and belief, RCN Telecom Services (Lehigh), LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

21.     Based on information and belief, RCN Telecom Services of New York, L.P. is a Delaware limited partnership with its principal place of business in Princeton, New Jersey.

22.     Based on information and belief, RCN Telecom Services of Philadelphia, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

23.    Based on information and belief, RCN Telecom Services of Illinois, LLC is an Illinois limited liability company with its principal place of business in Princeton, New Jersey.

24.    Based on information and belief, RCN Telecom Services of Massachusetts, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

25.    Based on information and belief, Patriot Media Consulting, LLC is a New Jersey limited liability company with its principal place of business in Princeton, New Jersey.

## JURISDICTION AND VENUE

26.    This Court has personal jurisdiction over Defendants because, inter alia, Defendants: (a) are headquartered in this state; (b) transacted business in this state; (c) maintained continuous and systematic contacts in this state prior to and during the class period; and (d) purposefully availed themselves of the benefits of doing business in this state. Accordingly, Defendants maintain minimum contacts with this state which are more than sufficient to subject it to service of process and to comply with due process of law.

27.    Each and every one of the Defendants, including Patriot Media Consulting, LLC, are headquartered in Princeton, New Jersey and in this judicial district. Defendants' corporate headquarters are located at 650 College Road East, Suite 3100, Princeton, New Jersey 08540, within this judicial district and division. Each Defendant is thus a citizen of New Jersey.

28.    Defendants created and implemented the unlawful scheme and associated policies and false advertising practices described herein at their corporate headquarters in Princeton, New Jersey.

29.    This Court has federal jurisdiction over the subject matter of this action by virtue of the fact that this is a proposed class action where the amount in controversy, exclusive of

interest and costs, exceeds $5,000,000, and Plaintiffs and Defendants are citizens of different states.

30.    Venue is proper in the District of New Jersey because Defendants are headquartered in this District, regularly transacted and continue to transact business in this District, and created and implemented the unlawful policies complained of herein in and from this District.

31.    Moreover, the "Internet Access Agreement" set forth on Defendants' website[1], which is incorporated into the RCN Customer Terms and Conditions[2] and purports to give rise to a binding agreement between RCN and its customers, including Plaintiffs and the Class, requires that any claim brought against RCN be brought in and resolved by the state or federal courts in New Jersey.

## APPLICABILITY OF NEW JERSEY LAW

32.    The "Internet Access Agreement" set forth on Defendants' website[3], which is incorporated into the RCN Customer Terms and Conditions[4] and purports to give rise to a binding agreement between RCN and its customers, including Plaintiffs and the Class, requires that disputes between RCN and its customers be governed by the laws of the State of New

---

[1] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/internet-access-agreement/ (last accessed July 7, 2020).

[2] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/customer-terms-and-conditions/ (last accessed July 7, 2020).

[3] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/internet-access-agreement/ (last accessed July 7, 2020).

[4] See https://www.rcn.com/hub/about-rcn/policies-and-disclaimers/customer-terms-and-conditions/ (last accessed July 7, 2020).

Jersey, excluding its conflicts of law rules. Thus, all claims made herein against Defendants by Plaintiffs and the Class are properly brought under New Jersey law.

### THE UNIFORM POLICIES WHICH GIVE RISE TO THE CLASS CLAIMS

33.    RCN is a provider of broadband internet, television, and telephone services to approximately 400,000 customers in and around six metropolitan areas in the United States: New York, New York; Chicago, Illinois; Boston, Massachusetts; Washington, D.C.; Philadelphia, Pennsylvania; and Allentown, Pennsylvania. Virtually all of RCN's customers subscribe to broadband internet; many also subscribe to television and/or telephone service as part of a "bundled" service plan.

34.    RCN has a policy of falsely advertising and offering its services at lower monthly rates than it actually charges customers, by not disclosing and not including in the advertised price a bogus and invented "Network Access and Maintenance Fee" (the "Fee") that RCN charges to its broadband internet customers each month.

35.    RCN first snuck the Fee onto customer bills in January 2018 at a rate of $1.97 per month. Since then, RCN has systematically increased the bogus monthly Fee by $1.20 each year—to $3.17 in January 2019, and then to $4.37 in January 2020. RCN has used the Fee as a lever to covertly, improperly, and unilaterally jack up the monthly rates for its broadband internet services without having to publicly disclose to consumers the higher actual monthly prices. RCN has deliberately rolled out the Fee and the increases thereto in a manner that is designed by RCN to further ensure that they go unnoticed by customers.

36.    Through the scheme alleged herein, RCN has, in effect, created a "bait-and-switch" scheme that enables it to advertise and promise a lower monthly price for its internet

9

services than it actually charges, and to surreptitiously increase its monthly price for existing

customers at its whim, via this below-the-line hidden and deceptive Fee.

37.     Moreover, RCN charged, and continues to charge, the Network Access and

Maintenance Fee to its customers, including Plaintiffs and the Class, without ever having

adequately disclosed or explained the Fee. RCN did not disclose the Fee to its customers until

after they signed up for RCN's services. And RCN still has never provided a proper explanation

for the Fee, instead falsely or deceptively describing it alternatively as a tax or a pass-through

fee.

38.     Based on Plaintiffs' calculations, from January 2018 through the present RCN has

collected approximately $30 million in unlawful Network Access and Maintenance Fees from its

approximately 400,000 broadband internet customers in the United States. And RCN is

continuing to collect approximately $1.75 million every month in these bogus Fees from its

customers.

39.     Contrary to RCN's assertions in its fine print disclosures and on its bills, the

Network Access and Maintenance Fee is <u>not</u> a tax or government assessment. Nor is the Fee any

sort of "pass-through" charge that was imposed by or paid to any third party. Instead, the Fee is a

fabricated charge invented by RCN as part of a scheme to covertly raise the monthly broadband

internet price without having to publicly and accurately disclose the actual higher price.

**A.     <u>RCN Fails To Disclose The Fee To Its Customers.</u>**

40.     At all relevant times, RCN has aggressively advertised its broadband internet

service plans (and plans that "bundle" TV and/or phone service with broadband internet) through

pervasive marketing directed at the consuming public in New Jersey, Pennsylvania, New York,

Massachusetts, Illinois and Washington, D.C. This marketing includes video advertisements via

10

YouTube, Facebook and Twitter; television, radio, and internet advertisements; and advertisements on its website and through materials at its retail stores where customers can sign up for RCN services.

41.     Through all of these channels, RCN prominently advertises particular flat monthly prices for its broadband internet service plans, without disclosing or including the Fee in the advertised price. Neither the existence nor the amount of the Fee is disclosed or adequately disclosed to customers prior to or at the time they sign up for the services, even though RCN knows that it plans to charge the Fee to each and every one of its customers and knows with certainty the exact amount of the charge.

42.     Likewise, RCN's sales and customer service agents quote the same flat monthly prices as in RCN's public advertising, and as a matter of policy do not disclose the Network Access and Maintenance Fee. If a potential customer calls RCN's sales or customer service agents, or reaches out via web chat, and asks what if any other fees will be charged for internet service, the agents as a matter of company policy say that the only additions to the advertised price (besides subscriptions to extra services or features) are taxes or government-related fees passed on by RCN to the customer.

43.     For example, RCN ran a video advertising campaign on YouTube, Facebook and Twitter in May 2020 that promoted the price for its 250 Mbps broadband internet service as $34.99 per month.[5]  The advertisement emphasized the importance of broadband internet during the COVID-19 pandemic with the statement "Fast Internet is a Necessity Especially Now" and then prominently featured the **$34.99** flat monthly rate in giant text. There was no asterisk next to the advertised $34.99 price or other qualifier disclosing the Network Access and Maintenance

---

[5] The 2020 video ad can be viewed here: https://www.ispot.tv/ad/nIEt/rcn-telecom-necessity-3499#  (last accessed on July 7, 2020).

Fee (which in fact added $4.37, or 12.5% more, to the advertised monthly price). For a couple of seconds toward the end of the advertisement, there was some *very* tiny print that appeared on the bottom of the screen, eighteen sentences long and so tiny as to render it unreadable by any reasonable consumer. The eleventh of these eighteen tiny-print sentences said that "Additional fees apply for franchise fees, government imposed charges and fees, taxes, surcharges, equipment, activation and installation that are not included as part of the package and are subject to increases." There was no voice reading this tiny print.

44.     The unreadable, tiny print reference in this video advertisement to "taxes," "government imposed charges and fees" and "surcharges" does not remotely constitute an adequate disclosure of the Fee by RCN, particularly in light of the prominence given to the supposed flat monthly service charge in RCN's marketing. Nowhere—even in the purported tiny print disclosure—is the Network Access and Maintenance Fee specifically mentioned or disclosed to consumers. Moreover, in any event, as alleged herein, the Network Access and Maintenance Fee is not, in fact, a bona fide tax or surcharge, but rather is a made-up fee RCN utilizes to charge more for the internet service itself than RCN advertises.

45.     Likewise, at all relevant times, RCN's website has advertised its broadband internet service plans and bundles prominently featuring a supposed flat monthly price for the service, and not adequately disclosing the Fee.

46.     For example, RCN's website currently advertises the same (purported) $34.99 250 Mbps broadband internet plan for the New York region that was the subject of the previously described video advertisement. RCN prominently features the $34.99 price on its website without an asterisk or any other suggestion that the monthly cost for the service will actually be higher than $34.99 per month. After the consumer selects the $34.99 plan, the

12

consumer is brought to the "Customize" webpage where the consumer can customize the

services and add-ons. On the right side of the "Customize" webpage RCN prominently states

"Estimated Monthly Total $34.99/mo" (the amount may increase to reflect the consumer

choosing additional options on the left such as a modem rental or additional services).  Again,

there is no asterisk next to the $34.99 price or any suggestion that the monthly cost for the

service will be higher than the "$34.99/mo" advertised price. Likewise, on the next webpage,

where the customer enters his or her personal payment information, the right side of the webpage

continues to state "Estimated Monthly Total $34.99/mo" with no asterisk or qualifier. On none of

these webpages is any mention made of the additional Network Access and Maintenance Fee or

of any additional monthly service charges.

      47.     At the very end of the online order process, on the "Submit Order" final webpage,

RCN lists a heading called "Estimated Taxes."  For this 250 Mbps broadband internet

"$34.99/mo" plan in the New York region, RCN lists the amount of "Estimated Taxes" as $8.36.

Only if the customer clicks a small "See Details" hyperlink underneath the "Estimated Taxes"

heading, does RCN display tiny print that "Estimated monthly surcharges may include: …

Network Access and Maintenance Fee and, in some cities, a Municipal surcharge. For more

information on surcharges, visit rcn.com/rateFAQs." At the designated rcn.com/rateFAQs

webpage, RCN quantifies the "Network Access and Maintenance Fee" as $4.37, and a Municipal

Construction Surcharge as $3.99 (together these two charges total $8.36). On this designated

webpage, RCN falsely states the Network Access and Maintenance Fee is part of pass-through

"Broadcast TV, Sports & Entertainment Network Surcharges" that are "paid to networks and sports channels" or "demanded by local broadcasters."[6]

48.     Each of these (conflicting) representations about the nature of the Network Access and Maintenance Fee is false. The Network Access and Maintenance Fee is <u>not</u> a tax. It is also <u>not</u> a pass-through surcharge imposed by or paid to a third party network, sports channel, or local broadcaster. In fact, the Fee is fabricated and made-up by RCN as a way to deceptively charge more for RCN's broadband internet service than advertised or promised.

**B.     <u>RCN Continues To Deceive Customers After They Sign Up</u>**

49.     RCN continues to deceive its customers about the Network Access and Maintenance Fee and the true monthly price of its broadband internet services after they have signed up and are paying for the services.

50.     RCN doubles down on its deceptive scheme by committing billing fraud to further trick its customers into believing the Fee is a government tax. RCN intentionally buries the "Network Access and Maintenance Fee" in the "Taxes, Surcharges & Fees" section of the bill, lumped together with purported taxes and government and third-party pass-through charges. This misleadingly tells RCN's customers that the Fee is an actual tax or other standard government or third-party pass-through fee, when in fact it is a completely made-up "fee" which RCN uses to surreptitiously charge higher rates than it advertised and promised.

51.     RCN does not define the Fee anywhere on its billing statements. Instead, in small print in the "Taxes, Surcharges & Fees" section of the bill, RCN tells customers they can get an "explanation" of the various taxes and charges in that section by visiting the RCN webpage "www.rcn.com/help." On that webpage, RCN features a headline titled "Understanding Taxes

---

[6] <u>See</u> https://rcn.com/rateFAQs, which forwards to https://www.rcn.com/hub/truth-about-channel-negotiations/network-costs/network-surcharges/ (last accessed July 7, 2020).

and Fees" which states "Find detailed tax definitions outlined by charge type" followed by a "Read more" hyperlink. When the customer clicks on "Read more," the customer arrives on a webpage titled "Understanding Taxes" (url: www.rcn.com/hub/help/understanding-taxes), where RCN falsely states that the Network Access and Maintenance Fee is a "tax." (Meanwhile, RCN's "Billing FAQs" webpage, which also is promoted on the www.rcn.com/help webpage, likewise directs customers who want to learn "What taxes and fees does RCN add to my bill?" to go to the same "Understanding Taxes" webpage.)

52.    On this "Understanding Taxes" webpage, customers are repeatedly told that the "Network Access and Maintenance Fee" a tax. The Fee is listed at the very bottom of a chart displaying twenty "TAX TYPES," almost all of which (unlike the Fee) are actual taxes and government-related fees. For example, the "Tax Types" listed (one per row in the chart) include the Federal Excise Tax, Federal Universal Service Fund, State Sales Tax, State Gross Receipts Tax, State Excise Tax, City Sales Tax, 911 Tax, Franchise Fee, and the Regulatory Fee. The very last (i.e., the twentieth) "Tax Type" listed on the chart is the "Network Access and Maintenance Fee," which RCN describes as a "Tax for Data (Internet)" that is "Imposed on" the "Customer."[7]

---

[7] In the "Tax" "Definition" column of this "Tax Type" chart (at www.rcn.com/hub/help/understanding-taxes), RCN additionally describes the "Network Access and Maintenance Fee" as "A fee defray [sic] costs associated with building and maintaining RCN's fiber rich broadband network, as well as the costs of expanding network capacity to support the continued increase in customers' average bandwidth consumption." This description is false and misleading for several reasons. First, the Fee is not a "Tax" as RCN states on this webpage and in the chart. Further, based on information and belief, the Fee is not tied directly to any "costs associated with building and maintaining" RCN's network or "expanding network capacity." Finally, any costs of building, maintaining, or expanding RCN's network should be included in the advertised monthly price for RCN's services because RCN's network is a necessary and indispensable element in providing the internet service for which its customers are paying. A reasonable consumer would expect such costs to be included in the advertised price for RCN's broadband internet service.

53.     However, the Network Access and Maintenance Fee is <u>not</u> a tax. In fact, RCN fabricated and invented the Fee as a way to deceptively charge more for RCN's broadband service than RCN advertises or promises. RCN falsely describes the Fee as a tax on its bill and on its website in order to trick its customers into believing the Fee is a pass-through government charge over which RCN has no control. RCN's fraudulent scheme is so elaborate that even a customer who notices the Fee buried in the "Taxes, Surcharges & Fees" section of the bill, and who then takes it upon himself or herself to read the "explanation" of the charge by following the url breadcrumb trail provided by RCN on the bill, is then explicitly lied to and told the Fee is a tax.

54.     RCN's billing fraud which indicates and even outright states that the Fee is a tax, is further reinforced by lies told by RCN's sales and customer service agents. If a customer who notices the Fee on the bill calls or live-chats with RCN to ask or complain about the Fee, RCN's policy and practice is to falsely tell the customer that the Fee is a tax or government-related fee.

55.     RCN first began sneaking the Fee into all of its customers' bills in January 2018, initially at a rate of $1.97 per month. For customers like Plaintiffs Katherine Grillo and Christian Reid, who signed up prior to that time, the first these customers could have possibly learned about the existence of the Fee was on their bill after Fee was introduced, which they would have received months or even years after they signed up with RCN. Meanwhile, even then, a reasonable consumer would not have noticed the Fee buried in the "Taxes, Surcharges & Fees" section of the bill grouped with actual taxes, government and pass-through fees. And even if the consumer had noticed the Fee, the fine print on RCN's bill directed consumers to an "explanation" of the Fee on RCN's website that falsely and explicitly stated the Fee was a "tax."

56. For customers who signed up after RCN began imposing the Fee, the billing statements were likewise the first possible chance they could have learned about the Fee, and by the time they received their first statement they were already committed to their purchase. Meanwhile, RCN's billing fraud (stating the Fee was a "tax") and RCN's policy of customer service agents falsely stating the Fee was a tax or government charge, furthered RCN's scheme and deception and prevented customers from learning the truth.

57. If customers realized that their actual total monthly bill was higher than promised, they could not simply back out of the deal without penalty, even if they noticed the Fee and were not fooled by RCN's billing fraud on their very first bill. For example, most customers are required to pay a one-time "Account Activation Fee" of $9.99, which RCN claims is used to offset the costs associated with setting up the customer's account, activating the customer's equipment, and connecting the customer's home to RCN's network. Many customers are also required to pay an "Installation Fee" of $49.99, which RCN claims is used to cover its costs associated with sending a technician to the customer's home to set up RCN's services. Customers may also purchase new devices to use exclusively with RCN's services, such as internet and telephone modems, wireless routers, and/or digital cable converter boxes.

58. The Account Activation Fee and the Installation Fee function as ways to penalize and deter customers from cancelling after signing up, and RCN's policies are deliberately and knowingly designed by RCN to lock customers in if and when they deduce that they are being charged more per month than advertised for RCN's service.

59. Because the initial amount of the Network Access and Maintenance Fee ($1.97 in January 2018) and each of the two yearly increases of $1.20 per year (to $3.17 in January 2019 and to $4.37 in January 2020) were relatively small in proportion to RCN's total monthly

charges, RCN knows that its customers were unlikely to notice the new and increased charges on their monthly invoices. And given that taxes and other government-related charges can already vary by amounts of approximately one dollar from month to month—and often will increase from year to year—RCN knows that its customers reasonably expect small changes in the total amount billed each month. RCN knows that its customers would not be readily able to tell that RCN increased the service price via the Fee by merely comparing the total amount billed in a particular month to the total amount billed in the prior month or months.

60.     Each time RCN increased the Network Access and Maintenance Fee, RCN hid the increase by providing no disclosure or explanation whatsoever anywhere on the first billing statement containing that increase, other than listing the increased Fee itself (buried in the "Taxes, Surcharges & Fees" section). Even a customer who read the entire invoice would have zero notice that RCN had increased the Fee, or why the customer's new monthly bill was higher than the prior month's total, without comparing the bill line-by-line with prior bills.

## PLAINTIFF'S FACTUAL ALLEGATIONS

### Plaintiff Katherine Grillo

61.     Plaintiff Katherine Grillo is, and at all relevant times has been, a citizen and resident of Middlesex County, Massachusetts.

62.     Grillo was a subscriber of RCN's broadband internet service from September 2017 through January 2020.

63.     On or around August 10, 2017, Grillo went to the RCN website to learn about RCN's service offerings including broadband internet. After browsing the website, she signed up for service by purchasing a 12-month service plan which included broadband internet and cable television service. Grillo's RCN service was installed at her home on September 1, 2017.

18

64.    When Grillo purchased her service plan, RCN prominently advertised, to Grillo and to the public, that the plan would cost a particular monthly price for a 12-month period. RCN did not disclose to Grillo, at any time before or when she signed up, that RCN would or might later add a "Network Access and Maintenance Fee" on top of the advertised and promised monthly price.

65.    When Grillo purchased her service plan, she also paid RCN a one-time account activation fee and a one-time installation fee.

66.    RCN first began charging the Network Access and Maintenance Fee (the "Fee") to Grillo in January 2018, at a rate of $1.97 per month. Grillo did not receive full, accurate, or non-misleading notice from RCN that the Fee would be charged or regarding the nature or basis of the Fee. Grillo did not then know, nor could she then know, that the Fee was invented by RCN as part of a scheme to covertly raise the monthly rate of its broadband internet service.

67.    On or around January 2019, Grillo's bill increased when RCN raised the Fee by $1.20, to $3.17. Grillo did not receive adequate or accurate notice that the Fee would be increased or regarding the nature or basis of the Fee. Grillo did not then know, nor could she then know, that the Fee was invented by RCN as part of a scheme to covertly raise the monthly rate of its broadband internet service.

68.    On or around January 2020, Grillo's bill increased when RCN again raised the Fee by $1.20, to $4.37. Grillo did not receive adequate or accurate notice that the Fee would be increased or regarding the nature or basis of the Fee. Grillo did not then know, nor could she then know, that the Fee was invented by RCN as part of a scheme to covertly raise the monthly rate of its broadband internet service.

69.     At the time she purchased her original RCN service plan, Grillo signed up for paperless billing, as RCN encouraged her to do. Grillo was signed up for paperless billing for all relevant times, and did not receive paper bills. As part of paperless billing, each month Grillo would receive an email from RCN with the subject line "Your RCN bill statement is available in MyRCN." The emails stated only the total amount due and the due date, and did not list or break out the charges. Each month, Grillo would login to her RCN account and pay the bill.

70.     During the time Grillo subscribed to RCN, she had not specifically noticed the "Network Access and Maintenance Fee." RCN had hidden the Fee in the final "Taxes, Surcharges & Fees" section of the full version of the bill (a pdf copy of the full bill was downloadable from the MyRCN website). The Fee was grouped in the "Taxes, Surcharges & Fees" section with eight other purported taxes or government-related fees or pass-throughs. On those occasions where Grillo downloaded and viewed the full version of the bill, Grillo reasonably assumed and understood the charges in the Taxes, Surcharges & Fees section, including the Fee, to be taxes or government-related charges.

71.     RCN's "bill statement" emails, and RCN's downloadable full bills, did not inform or adequately disclose to Grillo that RCN was adding a self-created "Network Access and Maintenance Fee" each month, and did not adequately or accurately disclose the true nature of the Fee. Grillo did not know, nor could she know, that the Fee was invented by RCN as part of a scheme to covertly raise the monthly rate of its broadband internet service.

72.     Soon after RCN increased Grillo's cable bill by approximately $26 in January 2020, Grillo terminated her service with RCN.

73.     Grillo paid RCN a total of approximately $61.68 in Network Access and Maintenance Fees while she was a subscriber. Through the imposition and increase of the

20

Network Access and Maintenance Fee, RCN charged Grillo a higher price for her broadband internet service each month than RCN promised her and she expected to pay, causing her damages.

74.    When Grillo agreed to purchase her RCN service plan, she was relying on RCN's representations regarding the monthly price of the services. While she understood that taxes might be added to the price, she did not expect that RCN would charge a bogus, self-created Network Access and Maintenance Fee on top of the advertised or promised price or that the true price of the service would include the additional Fee. That information would have been material to her. Had she known that information she would not have been willing to pay as much for her service plan.

**Plaintiff Christian Reid**

75.    Plaintiff Christian Reid is, and at all relevant times has been, a citizen and resident of Northampton County, Pennsylvania, which is located in the Lehigh Valley region.

76.    Reid moved into his current home in Northampton County, Pennsylvania in the summer of 2016. Soon after moving in, Reid called RCN to learn about its broadband service offerings. The agent he spoke to offered him a broadband internet plan with modem rental for a flat-rate price "plus taxes," and told him the price would not change for at least twelve months. Based on RCN's representations to him, Reid signed up for the broadband service plan, which was installed at his home on or about June 4, 2016.

77.    When Reid purchased his service plan, RCN prominently advertised, to Reid and to the public, that the plan would cost a particular monthly price for a 12-month period. RCN did not disclose to Reid, at any time before or when he signed up, that RCN would or might later add a "Network Access and Maintenance Fee" on top of the advertised and promised monthly price.

78.     When Reid purchased his service plan, he also paid RCN a one-time account activation fee and a one-time installation fee.

79.     RCN first began charging the Network Access and Maintenance Fee (the "Fee") to Reid in January 2018, at a rate of $1.97 per month. Reid did not receive full, accurate, or non-misleading notice from RCN that the Fee would be charged or regarding the nature or basis of the Fee. Reid did not then know, nor could he then know, that the Fee was invented by RCN as part of a scheme to covertly raise the monthly rate of its broadband internet service.

80.     On or around January 2019, Reid's bill increased when RCN raised the Fee by $1.20, to $3.17. Reid did not receive adequate or accurate notice that the Fee would be increased or regarding the nature or basis of the Fee. Reid did not then know, nor could he then know, that the Fee was invented by RCN as part of a scheme to covertly raise the monthly rate of its broadband internet service.

81.     On or around January 2020, Reid's bill increased when RCN again raised the Fee by $1.20, to $4.37. Reid did not receive adequate or accurate notice that the Fee would be increased or regarding the nature or basis of the Fee. Reid did not then know, nor could he then know, that the Fee was invented by RCN as part of a scheme to covertly raise the monthly rate of its broadband internet service.

82.     In the bills RCN mailed Reid each month, RCN buried the Fee in the last section of the bill called "Taxes, Surcharges & Fees," listing the Fee together with the sales tax. On those occasions where Reid reviewed the bill, Reid reasonably assumed and understood the charges in the Taxes, Surcharges & Fees section, including the Fee, to be taxes or government-related charges.

83.    RCN's bills did not inform or adequately disclose to Reid that RCN was adding a self-created "Network Access and Maintenance Fee" each month, and did not adequately or accurately disclose the true nature of the Fee. Reid did not know, nor could he know, that the Fee was invented by RCN as part of a scheme to covertly raise the monthly rate of its broadband internet service.

84.    As of the filing of this Complaint, Reid has paid RCN a total of approximately $87.90 in Network Access and Maintenance Fees. Through the imposition and increase of the Network Access and Maintenance Fee, RCN charged Reid a higher price for his broadband internet service each month than RCN promised him and he expected to pay, causing him damages.

85.    When Reid agreed to purchase his RCN broadband internet service plan, he was relying on RCN's representations regarding the monthly price of the services. While he understood that taxes might be added to the price, he did not expect that RCN would charge a bogus, self-created Network Access and Maintenance Fee on top of the advertised or promised price or that the true price of the service would include the additional Fee. That information would have been material to him. Had he known that information he would not have been willing to pay as much for his service plan.

## CLASS ACTION ALLEGATIONS

86.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23, seeking damages, statutory penalties, and injunctive relief under New Jersey state law on behalf of themselves and all members of the following proposed Class:

> **All current and former customers of RCN who, between January 1, 2018 and the present were charged what RCN labeled a "Network Access and Maintenance Fee."**

87.    Excluded from the above Class are Defendants and any entities in which any Defendant has a controlling interest, their officers, directors, employees, and agents, the judge to whom this case is assigned, members of the judge's staff, and the judge's immediate family.

88.    **Numerosity.** The members of the Class are so numerous that joinder of all members would be impracticable. While Plaintiffs do not know the exact number of Class members prior to discovery, upon information and belief, there are at least 400,000 Class members. The exact number and identities of Class members are contained in RCN's records and can be easily ascertained from those records.

89.    **Commonality and Predominance.** All claims in this action arise exclusively from the uniform policies and procedures of Defendants as outlined herein. This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions include, but are not limited to, the following:

a.    Whether New Jersey law applies to the claims of Plaintiffs and the Class;

b.    Whether Defendants employ a uniform policy of charging a Network Access and Maintenance Fee to RCN's customers;

c.    Whether Defendants adequately or accurately disclosed the Network Access and Maintenance Fee to RCN's customers;

d.    Whether Defendants' charging of the Network Access and Maintenance Fee to RCN's customers is a false, deceptive, or misleading policy;

e.    Whether Defendants' descriptions of the Network Access and Maintenance Fee are false, deceptive, or misleading;

f.    Whether it was deceptive or unfair for Defendants not to disclose or to inadequately or inaccurately disclose the Network Access and Maintenance Fee, its dollar amount, or the fact that RCN could choose to raise its amount at any time, as part of the advertised and promised price of its broadband internet services;

g.    Whether the Network Access and Maintenance Fee, the fact that RCN could choose to raise it at any time, and the true price of RCN's broadband internet services are material information, such that a reasonable consumer would find that information important to the consumer's purchase decision;

h.    Whether Defendants' misrepresentations and omissions alleged herein constitute fraudulent concealment under the law of New Jersey;

i.    Whether Defendants have violated the implied covenant of good faith and fair dealing, implied in its contracts with Plaintiffs and the Class, by imposing and increasing the Network Access and Maintenance Fee;

j.    Whether Defendants' misrepresentations and omissions alleged herein violate the New Jersey Consumer Fraud Act;

k.    Whether Defendants' misrepresentations and omissions alleged herein violate the New Jersey Truth in Consumer Contract, Warranty and Notice Act;

and

1.      Whether Plaintiffs and the Class are entitled to an order enjoining RCN from engaging in the misconduct alleged herein, and prohibiting RCN from continuing to charge the Network Access and Maintenance Fee.

114.    **Typicality**. Plaintiffs, like all Class members, are current or former subscribers of RCN's broadband internet service plans who have been charged higher monthly rates than quoted at the time of subscription and/or whose rates have been surreptitiously increased by the imposition and raising of the Network Access and Maintenance Fee. Their claims all arise from the same course of conduct by RCN and are based on the same legal theories. Plaintiffs' claims are typical of all Class members' claims. Plaintiffs are each a member of the Class they seek to represent. All claims of Plaintiffs and the Class arise from the same course of conduct, policy and procedures as outlined herein. All claims of Plaintiffs and the Class are based on the exact same legal theories.

115.    **Adequacy**. Plaintiffs and their counsel will thoroughly and adequately protect the interests of the Class. Plaintiffs seek the same relief for themselves as for every other Class member. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class. Moreover, Plaintiffs have retained counsel who are highly experienced in prosecuting complex class action and consumer protection cases.

116.    **Superiority**. A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for RCN's conduct. Individual litigation would add administrative burden on the courts,

26

increasing the delay and expense to all parties and to the judicial system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial in this case.

117.    By its conduct and omissions alleged in this Complaint, RCN has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

118.    Without the proposed class action, Defendants will likely retain the benefits of RCN's wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiffs and Class members.

119.    Defendants fraudulently concealed the facts underlying the causes of action pled here, intentionally failing to disclose the true cost of RCN's services in order to deceive Plaintiffs and the proposed Class, despite Defendants' duty to make such disclosure. The nature of Defendants' misconduct was non-obvious and/or was obscured from public view, and neither Plaintiffs nor the members of the Class could have, through the use of reasonable diligence, learned of the accrual of their claims against Defendants at an earlier time.

## COUNT I

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J.S.A. § 56:8-1, et seq.

120.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

121.    Defendants' representations with regard to the pricing and nature of RCN's service plans with broadband internet on RCN's website, in media including internet, television,

radio and print, and by RCN's sales and customer service agents, are "advertisements" within the meaning of N.J.S.A. § 56:8-1(a).

122.    RCN's broadband internet service is "merchandise" within the meaning of N.J.S.A. § 56:8-1(c).

123.    Defendants are "persons" within the meaning of N.J.S.A. § 56:8-1(d).

124.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. (the "CFA"), was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 689 A.2d 852, 857 (N.J. Ct. App. 1997).

125.    The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 441 (N.J. 2004) ("The [CFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

126.    Indeed, "[t]he available legislative history demonstrates that the [CFA] was intended to be one of the strongest consumer protection laws in the nation." New Mea Const. Corp. v. Harper, 497 A.2d 534, 543 (N.J. Ct. App. 1985).

127.    For this reason, the "history of the [CFA] is one of constant expansion of consumer protection." Kavky v. Herbalife Int'l of Am., 820 A.2d 677, 681-82 (N.J. Ct. App. 2003).

128.    The CFA was intended to protect consumers "by eliminating sharp practices and dealings in the marketing of merchandise and real estate." Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 550 (N.J. 1997).

129.    Specifically, N.J.S.A. § 56:8-2 prohibits "unlawful practices" which are defined as:

> **The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission … whether or not any person has in fact been misled, deceived or damaged thereby ...**

130.    The catch-all term "unconscionable commercial practice" was added to the CFA by amendment in 1971 to ensure that the CFA covered, inter alia, "incomplete disclosures." Skeer v. EMK Motors, Inc., 455 A.2d 508, 512 (N.J. Ct. App. 1982).

131.    In describing what constitutes an "unconscionable commercial practice," the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

132.    In order to state a cause of action under the CFA, a plaintiff does not need to show reliance by the consumer. See Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d 807 (N.J. App. Div. 2000); Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997) (holding that reliance is not required in suits under the NJCFA because liability results from "misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby").

133.    As stated by the New Jersey Supreme Court in Lee v. Carter-Reed Co., L.L.C., 4 A.3d 561, 580 (N.J. 2010): "It bears repeating that the [NJCFA] does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss."

134.    It is also not required that an affirmative statement be literally false in order to be considered deceptive and misleading under the CFA. Even a statement which is literally true can

29

be misleading and deceptive in violation of the CFA. See Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (upholding a NJCFA claim where the defendant argued its written statement was literally true, holding "the fact that the labels were literally true does not mean they cannot be misleading to the average consumer.").

135.    A CFA violation also does not require that the merchant be aware of the falsity of the statement or that the merchant act with an intent to deceive. See Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1997):

> **One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive... An intent to deceive is not a prerequisite to the imposition of liability.**

136.    Nor is it a defense to a CFA claim that the merchant acted in good faith. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 461 (N.J. 1994) ("the Act [CFA] is designed to protect the public even when a merchant acts in good faith.").

137.    In the case at bar, Defendant's policy of promising low monthly rates for its broadband internet services but later charging an inadequately disclosed and/or inaccurately described Network Access and Maintenance Fee to its customers, as described herein, is a deceptive, misleading, and/or unconscionable commercial practice in the sale of goods in violation of N.J.S.A. § 56:8-2 for the reasons set forth herein.

138.    This policy involves, inter alia, both misleading affirmative statements and the knowing omission of material facts.

139.    First, Defendants' practice of advertising RCN's broadband internet services for a low, flat monthly rate—which price does not reflect the actual monthly rate that RCN ultimately charges its customers because it does not include the Network Access and Maintenance Fee—is

an affirmative misleading and deceptive statement in the sale of goods or services in violation of N.J.S.A. § 56:8-2. Defendants' practice of categorizing and describing the Network Access and Maintenance Fee as a tax imposed by the government or as a pass-through fee imposed by networks and broadcasters are also affirmative misleading and deceptive statements in violation of N.J.S.A. § 56:8-2.

140.    Second, Defendants failed to adequately disclose the Network Access and Maintenance Fee to RCN's customers before they agreed to purchase RCN's broadband internet services, and Defendants continued to fail to adequately disclose the Fee, inter alia, by intentionally falsely describing the Fee as a tax on its website, by lumping the Fee with taxes and government-related fees on its bills, by referring on the bill to the false description of the Fee on the RCN website, by obscuring and failing to disclose the true nature of the Fee, and by having a policy of customer service and sales agents falsely telling customers that the Fee was a tax or government-related charge. Defendants have never explained to RCN's customers that the true reason RCN charges the Fee is that it is a surreptitious way to charge more for RCN's services than the advertised and promised price for those services. Thus, Defendants' policy also involves knowing omissions of material fact in the sale of goods in violation of N.J.S.A. § 56:8-2.

141.    Defendants' deceptive policies described herein also violate N.J.S.A. § 56:8-2.2, as RCN advertised its broadband internet services as part of a plan or scheme not to sell the services at the advertised price.

142.    Plaintiffs and Class members reasonably and justifiably expected Defendants to comply with applicable law, but Defendants failed to do so.

143.    As a direct and proximate result of these unlawful actions by Defendants, Plaintiffs and the Class have been injured and have suffered an ascertainable loss of money.

144.    Specifically, Plaintiffs and each Class member have been charged the bogus Network Access and Maintenance Fees on a monthly basis by RCN since January 2018, and have paid those Fees to Defendants. These payments constitute an ascertainable loss by Plaintiffs and the Class.

145.    Pursuant to N.J.S.A. § 56:8-19, Plaintiffs seek, inter alia, actual damages, treble damages, and injunctive relief for themselves and the Class.

## COUNT II

**VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT, N.J.S.A. § 56:12-14, et seq.**

146.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

147.    Plaintiffs and Class members are "consumers" within the meaning of N.J.S.A. § 56:12-15.

148.    Defendants are each a "seller" within the meaning of N.J.S.A. § 56:12-15.

149.    RCN's broadband internet service is a "service which is primarily for personal, family or household purposes" within the meaning of N.J.S.A. § 56:12-15.

150.    The advertisements and representations on RCN's website and monthly bills are consumer "notices," "signs" and/or "warranties" within the meaning of N.J.S.A. § 56:12-15.

151.    By the acts alleged herein, Defendants have violated N.J.S.A. § 56:12-15 because, in the course of Defendants' business, Defendants have offered, displayed and presented written consumer notices, signs and warranties to Plaintiffs and the Class which contained provisions that violated their clearly established legal rights under state law, within the meaning of N.J.S.A. § 56:12-15.

32

152.    The clearly established rights of Plaintiffs and the Class under state law include the right not to be subjected to unconscionable commercial practices and false written affirmative statements of fact in the sale of goods or services, as described herein, which acts are prohibited by the CFA, N.J.S.A. § 56:8-2.

153.    Plaintiffs and each Class member are aggrieved consumers for the reasons set forth herein, and specifically because, inter alia, each was charged the monthly Network Access and Maintenance Fee by Defendants and paid those Fees to Defendants, and each Plaintiff and Class member suffered an ascertainable loss under the CFA as described above.

154.    Pursuant to N.J.S.A. § 56:12-17, Plaintiffs seeks a statutory penalty of $100 for each Class member, as well as actual damages and attorneys' fees and costs. See N.J.S.A. § 56:12-17, providing that a seller who violates the TCCWNA: "shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." See also United Consumer Fin. Servs. Co. v. Carbo, 410 N.J. Super. 280, 310 (App. Div. 2009), affirming the trial judge's decision to award the $100 statutory penalty to each class member under N.J.S.A. § 56:12-17 of TCCWNA, stating:

> **[T]he $100 civil penalty is not unreasonably disproportionate when viewed in that context, whether it is considered with respect to an individual consumer or the 16,845 consumers whose contracts included the prohibited fee. We note that when assessing the constitutional reasonableness of punitive damage awards, courts are directed to consider and give "substantial deference" to judgments made by the Legislature in fixing civil penalties. Nothing about the facts of this case or the numerosity of this class warrants a more searching evaluation of the reasonableness of awarding the civil penalty selected by the Legislature to each member of this class.** (citation omitted).

33

## COUNT III

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

155.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

156.    To the extent any applicable contract could be read as granting Defendants discretion to impose and/or increase the monthly price charged to RCN customers above the price promised and quoted for RCN's broadband internet service—which Plaintiffs do not concede—that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by New Jersey law.

157.    Defendants have violated the covenant of good faith and fair dealing by their conduct alleged herein.

158.    Defendants have abused any discretion they purportedly had under any applicable contract to raise the monthly price for RCN's broadband internet services higher than that quoted. Based on counsel's investigation, RCN uses the Network Access and Maintenance Fee as a covert way to increase customers' monthly rates without having to advertise or accurately disclose such higher rates.

159.    Defendants' bait-and-switch scheme defied customers' reasonable expectations, was objectively unreasonable, and frustrated the basic terms of the parties' agreement. Defendants' conduct alleged herein was arbitrary and in bad faith.

160.    Defendants' conduct described herein has had the effect, and the purpose, of denying Plaintiffs and Class members the full benefit of their bargains with RCN.

161.    Plaintiffs and the Class members have performed all, or substantially all, of the obligations imposed on them under any applicable agreements with Defendants. There is no legitimate excuse or defense for Defendants' conduct.

34

162.    Any attempts by RCN to defend its overcharging through reliance on contractual provisions will be without merit. Any such provisions are either inapplicable or are unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory clauses, violate public policy, are procedurally and substantively unconscionable, and/or are unenforceable in light of the hidden and deceptive nature of RCN's misconduct, among other reasons. Any such provisions, if any, would not excuse RCN's abuses of discretion or otherwise preclude Plaintiffs and the Class from recovering for breaches of the covenant of good faith and fair dealing.

163.    Plaintiffs and members of the Class sustained damages as a result of Defendants' breaches of the covenant of good faith and fair dealing. Plaintiffs seek damages in an amount to be proven at trial.

## COUNT IV

### NEW JERSEY UNIFORM DECLARATORY JUDGMENTS ACT
### N.J.S.A. § 2A:16-51, et seq.

164.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if set forth fully herein.

165.    Pursuant to the New Jersey Declaratory Judgments Act (N.J.S.A. § 2A:16-51, et seq.), Plaintiffs and the Class need, and are entitled to, an order for injunctive and declaratory relief:

a.    Declaring that RCN's policy of charging a deceptive and inaccurately disclosed Network Access and Maintenance Fee to be a violation of New Jersey law;

b.    Enjoining RCN from engaging in the misconduct alleged herein, and

c.    Enjoining RCN from charging the Network Access and Maintenance Fee.

166.    Plaintiffs and the Class members have a significant interest in this matter in that

each has been or will be subjected to the unlawful policies alleged herein.

167.    Defendants are continuing to engage in the policy alleged herein.

168.    Plaintiff Christian Reid is a current customer and subscriber to Defendants' services, and is currently being charged the unlawful Network Access and Maintenance Fee on a monthly basis.

169.    Based on the foregoing, a justifiable controversy is presented in this case, rendering declaratory judgment and injunctive relief appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, on behalf of themselves and the proposed Class, Plaintiffs request that the Court order relief and enter judgment against Defendants as follows:

A.    Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

B.    Declare that Defendants are financially responsible for notifying all Class members of Defendants' deceptive and unconscionable business practices alleged herein;

C.    Find that Defendants' conduct alleged herein be adjudged and decreed in violation of the New Jersey laws cited above;

D.    Declare that RCN's policy of charging a deceptive and inaccurately disclosed Network Access and Maintenance Fee to be a violation of New Jersey law;

E.    Permanently enjoin Defendants from engaging in the misconduct alleged herein;

F.    Permanently enjoin Defendants from charging the Network Access and Maintenance Fee;

G.    Retain jurisdiction to monitor Defendants' compliance with the permanent injunctive relief;

36

H.      Grant economic, compensatory, and statutory damages on behalf of Plaintiffs and all members of the Class, to the maximum extent permitted by applicable law;

I.      Grant reasonable attorneys' fees and reimbursement all costs incurred in the prosecution of this action; and

J.      Grant such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

**DeNITTIS OSEFCHEN PRINCE, P.C.**

BY:

Stephen P. DeNittis (SD-0016)
Joseph A. Osefchen (JO-5472)
Shane T. Prince, Esq. (SP-0947)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(856) 797-9951
sdenittis@denittislaw.com
sprince@denittislaw.com

and

HATTIS & LUKACS
Daniel M. Hattis*
Paul Karl Lukacs*
400 108th Ave NE, Suite 500
Bellevue, WA 98004
(425) 233-8650
dan@hattislaw.com
pkl@hattislaw.com

* Pro Hac Vice application to be submitted

*Attorneys for Plaintiffs and the Proposed Class*